# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |  |
|---|---|---|---|
| LABORERS' PENSION FUND, et al., | ) | | |
| | ) | | |
| **Plaintiffs** | ) | | |
| | ) | **No.  07 C 3860** | |
| **v.** | ) | | |
| | ) | **Judge Joan H. Lefkow** | |
| SURFACE DIMENSIONS, INC., et al., | ) | | |
| | ) | | |
| **Defendants.** | ) | | |
| | ) | | |

## OPINION AND ORDER

Plaintiffs Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare

Department of the Construction and General Laborers' District Council of Chicago and Vicinity,

and James S. Jorgensen, Administrator of the Funds (collectively, "the Funds") filed suit against

Surface Dimensions, Inc. ("Surface Dimensions"), Substrate Technologies, Inc. ("Substrate"),

and William Jones, individually, seeking to recoup $249,809.37 in unpaid contributions, dues,

interest, liquidated damages and audit costs, plus attorneys' fees.  Plaintiffs also seek

reimbursement of $104,576.35 in benefits that they allege were improperly obtained by William

Jones.  Plaintiffs have moved for summary judgment under Federal Rule of Civil Procedure 56

[#59].  Before the court also is plaintiffs' motion to strike selected paragraphs from the affidavits

of William Jones and Lynn Jones, as well as the relevant paragraphs of defendants' Statement of

Undisputed Material Facts that rely on those paragraphs [#72].  For the following reasons,

plaintiffs' motion to strike is granted and its motion for summary judgment is granted in part and

denied in part.

This court's jurisdiction is based on sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(e)(1) and (2); section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), as amended 29 U.S.C. § 185(a); and 28 U.S.C. § 1331 (federal question). Venue is proper pursuant to section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391(a) and (b).

## BACKGROUND

### I. Surface Dimensions and Relevant Collective Bargaining Agreements

The parties do not dispute the threshold findings that the Funds are multiemployer benefit plans within the meaning of section 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(37)(A); that Plaintiff James S. Jorgensen ("Jorgensen") is the Administrator of the Funds authorized by the Funds' trustees to act with respect to the collection of employer contributions owed to the Funds and the amounts which have been or are required to be withheld from the wages of employees in payment of union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity ("the Union").[1] They further agree that Surface Dimensions was at all relevant times an Illinois corporation with an incorporation date of November 15, 1991; that the company was involuntarily dissolved on April 28, 2009; that it was in the business of furnishing commercial floor preparation and concrete polishing, and that it was at all times doing business within this district and an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and section 301(a) of the LMRA, 29 U.S.C. § 185(c). It is further undisputed that the Union is a labor organization within the meaning of 29 U.S.C.

---

[1]As relevant here, the Funds and Jorgensen have also been duly authorized to act as an agent in the collection of contributions due to a variety of funds, including the Union's Training Fund.

§ 185(a).  The Union and Surface Dimensions have been parties to successive collective bargaining agreements ("CBAs"), the most recent of which became effective on June 1, 2006.

Surface Dimensions entered into a Memorandum of Joint Working Agreement ("Memorandum") with the Union and Laborers' Local Union 4 on August 17, 1992.  This Memorandum binds Surface Dimensions to the terms of the various area-wide negotiated CBAs between the Union and the Funds' respective Agreements and Declarations of Trust.  As stated in paragraph 4 of the Memorandum:

> Employees covered by the Memorandum of Agreement shall retain all the work traditionally performed by laborers.  The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION.  Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof.  Notwithstanding any agreement to the contrary, the EMPLOYER'S violation of any provisions of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

The Agreements require that Surface Dimension submit benefit reports and contribution payments by the tenth day of the following month.  Payments which are not received within 30 days of this date are assessed liquidated damages in the amount of 10 percent (or 20 percent for pension, welfare and training fund contributions after June 1, 2007) of the principal amount of delinquent contributions, as well interest at a rate of 12 percent compounded annually from the date of delinquency forward.  Surface Dimensions is further obligated to submit its books and records to the Funds for periodic audits to determine benefit-contribution compliance. A revised audit of Surface Dimensions books and records for the period from January 1, 2001 through

September 30, 2006 revealed a total of $249,809.37 in unpaid contributions.[2]  *See* Pl.'s Ex. A, ¶ 5, Declaration of Rocco Marcello ("Marcello Dec."); Pl.'s Ex. A-8.  Surface Dimensions has not obtained and maintained a surety bond in accordance with the terms of the CBA.[3]

## II.    William Jones and Lynn Jones' Involvement with Surface Dimensions and Substrate

William Jones ("Jones") testified that at all times relevant he was the president of Surface Dimensions.  His duties included bidding jobs, performing jobs, fixing equipment, delivering equipment, picking up equipment and billing.  He testified at his deposition that he was the "leading individual" who did the hiring and firing for the company.  Between 1992 and 2008, the Funds accepted contributions from Surface Dimensions on behalf of Jones for pension and welfare benefits.  The pension fund has paid out a total of $29,461.19 to Jones in benefits based on hours submitted on his behalf by Surface Dimensions.  The welfare fund has paid out a total of $75,115.34 in claims on behalf of Jones and his dependents for hours submitted on his behalf by Surface Dimensions.  At some point while Jones was president of Surface Dimensions, he

---

[2] True and accurate copies of the benefit contribution reports submitted by Surface Dimensions for this time period are attached as plaintiffs' Exhibit A-9.  *See* Marcello Dec., ¶ 6.  In defendants' Revised Response to Plaintiffs' Statement of Undisputed Material Facts ("Def.'s Revised Response") [#80], they dispute the accuracy of this figure.  Yet they fail to cite to any piece of evidence in the record that contradicts it.  Instead, defendants rely solely on the denial put forth in their Answer to Plaintiffs' First Amended Complaint.  Defendants Revised Response, ¶ 14.  It is well-established, however, that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  *Twenhafel* v. *State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 630 (7th Cir. 2009) (citing Fed. R. Civ. P. 56(e)(2)).  Due to defendants' inability to contradict the findings of the audit, the figure calculated by Mr. Marcello is deemed admitted and undisputed for summary judgment purposes.

[3] In support of this fact, plaintiffs cite paragraph 7 of the Marcello Declaration.  As with the audit findings, defendants dispute this fact solely on the basis of assertions made in their Answer to Plaintiffs' First Amended Complaint.  The same analysis found in footnote 1 of this opinion applies here as well.  Therefore, this fact is deemed admitted and undisputed for purposes of the instant motion.

lent the company approximately $351,000.

Jones's wife, Lynn Jones, was a secretary of Surface Dimensions, as well as the 100 percent shareholder. Her duties as secretary included accounts receivable and payable, collectibles, insurance waivers and union reports. She prepared union reports based on time sheets that were submitted by the workers on a weekly basis. The time sheets were turned in directly to Lynn Jones, who checked their accuracy with her husband on a weekly basis and whenever something looked out of the ordinary. Lynn Jones was authorized to write checks and enter into contracts on behalf of Surface Dimensions. She also prepared applications for workers' compensation insurance and invoices. Additionally, Lynn Jones assisted Jones in preparing bids by calculating hours to determine whether jobs would be profitable. Lynn Jones would only visit job sites four or five times per year during the course of Surface Dimensions' operations.

Lynn Jones was also shareholder and member of Surface Dimensions Holdings, LLC, a separate entity from Surface Dimensions.[4] Surface Dimensions Holdings, LLC's sole purpose is to hold the property commonly known as 1384 Bungalow Road, located in Morris, Illinois. Surface Dimensions was operated from this same address from on or about September 2004 until the time it ceased operations in April 2009.

Substrate is an Illinois corporation with an incorporation date of January 24, 1994. Substrate operates out of 1384 Bungalow Road in Morris, Illinois—the same address formerly occupied by Surface Dimensions and currently held by Surface Dimensions Holdings, LLC.

---

[4] Throughout this opinion, all mentions of "Surface Dimensions" refer to Surface Dimensions, Inc. When referring to Surface Dimensions Holdings, LLC, the full name of the company will be used.

Substrate is and always has been in the business of manufacturing floor preparation and concrete polishing equipment for wholesale.[5] The company purchases materials for the assembly of equipment from a third party and finishes the equipment in-house prior to distribution.

At his deposition on May 4, 2010, Jones testified that he thought he was the president of Substrate, although he conceded that he may have been removed at some point. Jones described his job duties as an adviser to Substrate. He stated that he was very instrumental in a variety of tasks, including the design and building of the equipment, the sales promotion of the equipment, the delivery of the equipment, and with the products leading to that equipment.

Several members of Jones's family hold or have held an interest in Substrate. Lynn Jones is a 51% shareholder, and her son, Joshua, is a 49% shareholder. Previously, Lynn Jones had a 34% shareholder interest, Joshua had a 33% shareholder interest, and William and Lynn's daughter, Rebecca, also had a 33% interest in Substrate.

III.    **The Joneses' Assertion of their Fifth Amendment Privilege**

During his May 4, 2010 deposition, William Jones repeatedly asserted his Fifth Amendment privilege against self-incrimination. Jones refused to answer questions regarding the auditor's findings for work performed by Surface Dimensions and/or work payrolled through Substrate for the audit period of January 1, 2001 through September 30, 2006. Specifically, he refused to offer any information about the following issues: (1) whether the people identified in the audit performed work defined as covered under the terms of the applicable collective bargaining agreement between Surface Dimensions and the Union; (2) whether the revised audit

_____

[5] The parties dispute whether this was Substrate's exclusive business. Plaintiffs deny that it was the company's exclusive business. *See* Plaintiffs' Response to Defendants' Statement of Undisputed Facts, ¶ 10.

was an accurate description of the outstanding hours due to the Funds for work performed by Surface Dimensions or Substrate; (3) whether payroll was made to employees through Substrate on work that was performed on jobs originally contracted through Surface Dimensions; (4) whether employees were intentionally paid through Substrate to avoid payment of wages and fringe benefits that would be due under the terms of the applicable CBA and trust documents between Surface Dimensions and the Union; (5) whether Surface Dimensions contracted jobs to Substrate; and (6) whether Jones had at any time discussed—with either his employees or any other individuals—paying employees through Substrate to avoid payment of wages and fringe benefits that would be due under the applicable CBA and trust documents.

Jones also asserted his Fifth Amendment privilege in refusing to answer questions regarding whether Substrate ever used, leased or shared equipment or assets with Surface Dimensions.  Finally, Jones refused to discuss whether he ever employed or subcontracted work to any individuals who were employed or performed any work directly or through a subcontract of Surface Dimensions.

Lynn Jones also repeatedly asserted her Fifth Amendment privilege at her May 4, 2010 deposition.  The subject matter of the questions to which she asserted her privilege closely tracked the subject matter of her husband's deposition.  Specifically, Lynn Jones refused to answer questions regarding the following issues: (1) whether Substrate ever performed any type of floor preparation work or commercial floor preparation work or floor polishing work; (2) whether the individuals identified on the revised audit for the period of January 1, 2001 through September 30, 2006 performed work defined as covered under the terms of the applicable CBA and applicable trust documents between Surface Dimensions and the Union; (3) whether the

hours set forth on the audit findings were true and accurate to the extent that hours contained on the audit pertained to payroll made to employees through Substrate on work that was originally contracted through Surface Dimensions; (4) whether employees were intentionally paid through Substrate to avoid payment of wages and fringe benefits that would be due under the terms of the applicable CBA and trust documents between Surface Dimensions and the Union; (5) whether Surface Dimensions ever contracted any jobs to Substrate; and (6) whether Lynn Jones ever discussed—with employees or any other individuals—paying employees through Substrate to avoid the payment of wages and fringe benefits that would be due under the CBA and trust documents with employees.

William Skala, a former employee of Surface Dimensions, testified in a Declaration and Agreement of Indemnification (Doc. 62-10) to several matters that the Joneses refused to discuss. First, Skala testified that he had received payment from Substrate even though he performed the same type of work he did for Surface Dimensions with the same equipment and the same co-workers. Skala also testified that Jones was aware of the work he performed for both companies because Jones assigned the work and would supervise the employees on the projects in question. According to Skala, at an employee meeting in 2004 Jones explained that he was paying hours through Substrate because he could not afford to pay overtime and fringe benefit contributions as required by the CBAs on the projects. Instead, Jones advised that on certain projects employees would be paid straight-time hours without benefits through Substrate. Finally, Skala testified that Jones admonished him and other employees not to discuss the pay arrangement with Union officials. Skala signed his declaration under penalty of perjury on August 13, 2010. The Funds filed their motion for summary judgment on August 19, 2010.

On September 23, 2010, defendants submitted two affidavits, one from Jones and one from Lynn Jones, along with their response in opposition to plaintiffs' motion for summary judgment. Each affidavit contained assertions regarding factual matters that the affiants had refused to discuss during their respective May 4, 2010 depositions. The affidavits also contradicted several of Skala's sworn statements. Jones's affidavit stated that he had read Skala's declaration. Jones denied Skala's assertions about the alternative pay arrangement and his admonitions to employees not to discuss it. The affidavit of Lynn Jones stated, in pertinent part, that none of Substrate's equipment was ever used *exclusively* on a Surface Dimensions job site. Lynn Jones also testified that each of the two companies carries its own insurance coverage and files its own federal and state tax returns.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the nonmoving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris, Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact is one that might affect the outcome of the suit. *Insolia*, 216 F.3d at

598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I. Plaintiffs' Motion to Strike Affidavits of William and Lynn Jones

Plaintiffs' motion requests the court to strike selected paragraphs of the Jones's affidavits and selected paragraphs of defendants' statement of undisputed material facts that rely on those paragraphs from the Jones's affidavits.[6] Plaintiffs argue that these paragraphs should be stricken because the Joneses testified in their respective affidavits about issues they refused to discuss during their depositions.

The court may strike an affidavit (or paragraphs thereof) in support of or in opposition to a motion for summary judgment when the affidavit seeks to establish facts about which the affiant refused to testify pursuant to the Fifth Amendment privilege against self-incrimination. *See United States* v. *All Assets & Equip. of W. Side Bldg. Corp.*, 843 F. Supp. 377, 382–83 (N.D. Ill. 1993). It is well-established that the privilege against self-incrimination "cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support [or oppose] a motion for summary judgment." *In re Edmond*, 934 F.2d 1304, 1308 (4th Cir. 1991); *see also United States* v. *Parcels of Land*, 903 F.2d 36, 43 (1st Cir.

---

[6] Specifically, plaintiffs move to strike paragraphs 4, 6 and 7 of the Affidavit of Lynn Jones [#68-1]; paragraphs 6-8 of the Affidavit of William Jones [#68-4]; and the corresponding paragraphs 7, 8, 11, 14 and 15 of defendants' statement of undisputed material facts [#68] which rely on those paragraphs in the affidavits.

1990) (upholding district court's decision to strike claimant's affidavit offered in opposition to government's motion for summary judgment after claimant invoked Fifth Amendment privilege and refused to answer government's deposition questions). The Fifth Amendment is "not a positive invitation to mutilate the truth a party offers to tell." *Brown* v. *United States*, 356 U.S. 148, 156, 78 S. Ct. 622, 21 L. Ed. 2d 589 (1958). Although a civil litigant may invoke the privilege, it "cannot be invoked to oppose discovery and then tossed aside to support a party's assertions." *LaSalle Bank Lake View* v. *Seguban*, 937 F. Supp. 1309, 1320 (N.D. Ill. 1996) (citation omitted); *see also City of Chi.* v. *Reliable Truck Parts Co.*, 822 F. Supp. 1288, 1293 (N.D. Ill. 1993) (noting that witnesses "cannot hide behind the protection of the Fifth Amendment as to their contentions and later attempt to offer privileged testimony disputing the [opposing side's] evidence or supporting their own defenses"). Such preclusive effect is grounded in the reasoning that it is unfair to invoke the Fifth Amendment to avoid answering an opponent's inquiries during discovery, only to surprise the other side with favorable, self-serving testimony at the summary judgment stage.

## A. Affidavit of William Jones

By invoking his Fifth Amendment privilege during his May 4, 2010 deposition and subsequently submitting an affidavit denying Skala's sworn assertions that he knowingly violated the Agreements, Jones used his Fifth Amendment privilege "as both a sword and a shield" to defeat summary judgment. As the cited cases make clear, this is the stratagem that federal courts guard against in the context of a motion for summary judgment. By asserting his right to remain silent, Jones forfeited his ability to submit favorable testimony rebutting Skala's declaration.

Jones contends that, because he had not been named as a party in this case on the date of his deposition, he should not be prejudiced for invoking his Fifth Amendment privilege on May 4, 2010.[7] He argues that a material distinction exists between party and non-party claims for protection under the Fifth Amendment such that he can *waive* his Fifth Amendment protection now that he has been named as a defendant.

This argument is unpersuasive. The privilege against self-incrimination is a personal right, not one that depends on the setting in which it is asserted. *See LaSalle Bank Lake View* v. *Seguban*, 54 F.3d 387, 389 (7th Cir. 1995) ("[T]he privilege protects the *individual* from being compelled 'to answer official questions put to him in any proceeding . . . civil or criminal, formal or informal, where the answers might incriminate him in future proceedings.'" (quoting *Baxter* v. *Palmigiano*, 425 U.S. 308, 316, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976) (emphasis added))). Jones could not have asserted the privilege on behalf of the corporation, *Curcio* v. *United States*, 354 U.S. 118, 122, 77 S. Ct. 1145, 1148 (1957), so it had to have been for himself alone. The individual's status as a party or non-party to the litigation is immaterial. All that matters is whether the individual faces the remote chance of prosecution based on answers to questions "designed to elicit information about the existence of sources of potentially incriminating evidence." *United States* v. *Hubbell*, 530 U.S. 27, 43, 120 S. Ct. 2037, 147 L. Ed. 2d 24 (2000). Here, plainly, Jones's assertion of the privilege protected him from potential prosecution for fraud. Although he might have later waived his privilege and answered the questions posed to him, he has not done so. Thus, his denials must be disregarded.

**B.      Affidavit of Lynn Jones**

---

[7] William Jones was named as a defendant in his individual capacity in plaintiffs' First Amended Complaint, filed on June 1, 2010 [#52].

As stated, Lynn Jones was the sole shareholder of Surface Dimensions and a sole or at least substantial shareholder of Substrate. She allegedly permitted the illegal payment of wages to benefit the companies, herself, and her husband. Neither plaintiffs nor Lynn Jones disputes her right to invoke the privilege under these circumstances, and thus the only inference is that she did so to protect herself from potential criminal prosecution. Like her husband, Lynn Jones has used her privilege as both a sword and a shield when she submitted her affidavit after her deposition. Her affidavit was designed solely to rebut the claims in the Skala declaration, which is not permissible.

Plaintiffs' motion to strike is granted in full. Accordingly, the court strikes paragraphs 7, 8, 11, 14 and 15 of defendants' statement of undisputed material facts [#68] which rely on those paragraphs in the affidavits. These paragraphs will not be considered in the court's ruling on plaintiffs' motion for summary judgment.

## II.      Plaintiffs' Motion for Summary Judgment

Plaintiffs contend that all of the defendants are liable for the outstanding amounts due on the audit. The court analyzes the liability of each defendant separately. Also at issue is whether the Funds are entitled to repayment of pension and welfare benefits obtained by William Jones.

### A.      Liability of Surface Dimensions

The audit for the period of January 2001 through September 2006 has revealed $249,809.37 in unpaid contributions, dues, interest, liquidated damages and audit costs due to the Funds. Defendants have not presented any evidence to rebut this figure. Instead, defendants rely solely on their denial of liability for this amount stated in their Answer to plaintiffs' First Amended Complaint, which as explained in note 2 above is insufficient to create an issue of fact.

Therefore, no issue of material fact exists as to the accuracy of the amount stated in the audit or to Surface Dimensions' liability. The court thus grants summary judgment for plaintiffs on this issue and finds Surface Dimensions liable for the $249,809.37.

**B.      Liability of Substrate**

Plaintiffs assert that Substrate is also liable to the Funds for the amount calculated in the audit. Since Surface Dimensions has been dissolved, Substrate is the only corporate entity in this case that is solvent. Plaintiffs' theory of liability is that Surface Dimensions and Substrate comprise an integrated enterprise so as to constitute a single employer.

Two corporate entities may constitute a single employer when they "operate as an integrated enterprise and exert significant control over the employees in question." *Naperville Ready Mix, Inc.* v. *NLRB*, 242 F.3d 744, 752 (7th Cir. 2001) (internal quotations omitted); *Moriarty* v. *Svec*, 164 F.3d 323, 332 (7th Cir. 1998). To determine whether two companies are sufficiently integrated to constitute a single employer, courts look to a standard four-factor test: (1) common management; (2) centralized control of labor relations; (3) interrelation of operations; and (4) common ownership or financial control. *Id.* (citing *Radio Broad. Technicians Local 1264* v. *Broad. Serv. of Mobile, Inc.*, 383 U.S. 255, 256, 85 S. Ct. 876, 13 L. Ed. 2d 789 (1965)); *Moriarty*, 164 F.3d at 332. As with all factor-based tests, no single factor is determinative; instead, the court must make its judgment based on the totality of the circumstances.[8] *Esmark, Inc.* v. *NLRB*, 887 F.2d 739, 753 (7th Cir. 1989); *see also Naperville Ready Mix*, 242 F.3d at 752 ("The listed factors merely help to guide the [court] as it assesses

---

[8] This notwithstanding, the National Labor Relations Board has stressed the importance of the first three factors, particularly centralized control of labor relations. *See Fedco Freightlines, Inc.*, 273 N.L.R.B. 399, 401, 1984 WL 37093.

whether there exists overall control of the critical matters at the policy level.").

In contesting the liability of Substrate, defendants focus on certain selective features of each company.  Specifically, defendants point out that Surface Dimensions performed commercial floor preparation and concrete polishing, while Substrate only manufactured equipment for floor preparation.  Defendants also try to distinguish the companies by comparing their corporate tax returns on the basis of gross receipts of sales and costs of goods sold. Defendants assert that the Funds' single-employer argument "ignores the realities [of] each enterprise's separate and distinct corporate existence."  Def.'s Resp. to Pl.'s Motion for Summary Judgment at 5.  Yet, two entities can each have a separate and distinct corporate existence and still be considered a single employer under the LMRA.

Application of the four-factor test points to the conclusion that Surface Dimensions and Substrate are a single employer.  First, both companies had common management insofar as they were operated by William Jones.  Jones played an instrumental role in each company's managing duties, and at one time he has been president of both companies.  Secondly, Jones had centralized control of each company's labor relations.  Jones assigned and observed all work performed by his employees regardless of whether he paid them through Substrate or Surface Dimensions.  Moreover, each company was operated from the same location and utilized the same employees and same work materials.  As to the next factor, common ownership, Lynn Jones was a shareholder of both companies.

The conclusion is further justified if the Joneses' refusal to answer questions about the relationship between the two entities and Jones justifies an adverse inference against the entities based on the non-responses of their principal actors.  It is well-established that adverse

inferences from assertion of the privilege are allowed in civil cases against the party-witness who invoked it.[9] *Daniels* v. *Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993). As the Supreme Court held in *Baxter* v. *Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976), "the Fifth Amendment does not forbid inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment does not preclude the inference where the privilege is claimed by a party to a Civil cause." (internal quotations omitted) After *Baxter*, "there is no longer any doubt that at trial a civil defendant's silence may be used against him, even if that silence is an exercise of his constitutional right against self-incrimination." *Nat'l Acceptance Co. of Am.* v. *Bathalter*, 705 F.2d 924, 929 (7th Cir. 1983). At the same time, however, an adverse inference from a party's silence may not be warranted in all cases. "[T]he direct inference of guilt from silence is forbidden" in a civil case. *LaSalle Bank Lake View*, 54 F.3d at 390; *see also id.* (noting that analysis of the probative evidence against a party is required to draw an adverse inference based on refusal to testify). In addition, a party's silence is "only one of a number of factors to be considered by the finder of fact in assessing a penalty." *Lefkowitz* v. *Cunningham*, 431 U.S. 801, 808 n.5, 97 S. Ct. 2132, 53 L. Ed. 2d 1 (1977).

Here, of course, Substrate is a corporation. The Joneses were its testimonial representative but not the party. Nevertheless, unless the corporate party puts forth an alternative witness, the corporation will suffer the consequences of the witness's conduct in that (a) the opposing testimony stands unrebutted and (b), where appropriate, the fact finder may assume that truthful testimony would have been adverse to the witness.

---

[9]Adverse inferences may be drawn from a deponent's silence at a deposition. *See Harris* v. *City of Chi.*, 266 F.3d 750, 753–55 (7th Cir. 2001).

In this case, drawing an adverse inference from Jones's silence at his deposition is appropriate. First, the only time that Jones invoked the privilege was when plaintiffs' counsel asked him questions about the interrelatedness of Substrate and Surface Dimensions—issues that touched on his potential criminal liability. Second, if Substrate had another witness who could have answered the questions without incriminating himself, one can assume that witness would have been proffered. That there was no such witness indicates that Jones's testimony would have also been adverse to Substrate. Finally, plaintiffs have presented Skala's uncontradicted declaration[10] as independent evidence of Jones's liability. Without the testimony of the Joneses, Skala's statements stand unrebutted. Therefore, the court draws the inference that the two companies were interrelated, insofar as Jones utilized Substrate to payroll employees performing covered work.[11]

Plaintiffs have presented sufficient evidence that Substrate is liable as a single employer with Surface Dimensions for the outstanding amount due to the Funds. Therefore, the court grants summary judgment with regard to Substrate's liability for the $249,809.37.

### C.      Liability of William Jones Individually

The Funds also move for summary judgment against William Jones individually. They argue that as president of the corporate defendants Jones deliberately flouted ERISA obligations by defrauding the Funds in violation of the CBA, thus making him liable for the unpaid contributions. A corporate officer who is not a party to a pension plan or collective bargaining agreement is liable for pension contributions if the court can pierce the corporate veil and hold

---

[10] The court views the Skala declaration as uncontradicted on account of the earlier ruling striking certain paragraphs from the affidavits of William and Lynn Jones.

[11]  Considering that Lynn Jones also took the Fifth with regard to the companies' interrelatedness, it would be redundant to analyze the effect of her invocation on the single-employer issue.

the officer liable for general corporate debts under state law. *Plumbers' Pension Fund, Local 130* v. *Niedrich*, 891 F.2d 1297, 1302 (7th Cir. 1989); *Levit* v. *Ingersoll Rand Financial Corp.*, 874 F.2d 1186, 1194 (7th Cir. 1989). Under Illinois law, a court may pierce the corporate veil and hold an officer liable for the corporation's conduct when (1) there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and (2) "an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Gallagher* v. *Reconco Builders, Inc.*, 415 N.E.2d 560, 563–64, 91 Ill. App. 3d 999, 47 Ill. Dec. 555 (1980). Factors that are considered in determining whether there is such a unity of interest that the corporate veil should be pierced include: inadequate capitalization, failure to observe corporate formalities, insolvency of the debtor corporation, non-functioning of the other officers or directors, absence of corporate records, commingling of funds, diversion of assets from the corporation to the officer to the detriment of other creditors, failure to maintain an arm's-length relationship among related entities, and whether the corporation is a "mere facade" for the dominant shareholders. *See, e.g.*, *Boudreau* v. *Gentile*, 646 F. Supp. 2d 1016, 1023 (N.D. Ill. 2009) (citing *Fontana* v. *TLD Builders, Inc.*, 840 N.E.2d 767, 778, 362 Ill. App. 3d 491, 298 Ill. Dec. 654 (2005)). "The underlying congressional policy behind ERISA clearly favors the disregard of the corporate entity in cases where employees are denied their pension benefits." *Lumpkin* v. *Envirodyne Indus., Inc.*, 933 F.2d 449, 460 (7th Cir. 1991).

Plaintiffs have presented enough evidence to warrant piercing the corporate veil and holding William Jones personally liable for Surface Dimension's ERISA violations. Jones was the president of Surface Dimensions and his wife was the 100 percent shareholder. He testified

that he "run[s]" the company and that he hired, fired, and supervised employees. W. Jones Dep., Pl.'s Ex. D at 7–8. The uncontradicted Skala declaration and the adverse inferences drawn from Jones's Fifth Amendment invocation demonstrate that Jones used his control over Surface Dimension to disregard corporate formalities and that he failed to maintain an arms-length relationship between Surface Dimension and Substrate. Jones cannot create a genuine issue of fact on these issues because of his abuse of both the Fifth Amendment privilege and the discovery process. As a result of Jones's failure to pay his employees' contributions, he deprived eligible employees of their benefits. This deprivation is the sort of fraudulent "wrong" that is sufficient to satisfy the second condition needed to pierce the corporate veil. *See Hystro Prods., Inc.* v. *MNP Corp.*, 18 F.3d 1384, 1390 (7th Cir. 1994) (Illinois courts have pierced the corporate veil when failure to do so would unfairly enrich one of the parties or allow a corporation to escape responsibility). Accordingly, because both conditions required to pierce the corporate veil are satisfied, the court will grant summary judgment to the Funds on their claim against William Jones individually.

**D.    Whether the Funds are entitled to repayment of benefits obtained by William Jones**

The Funds claim that Surface Dimensions from 2002 to 2008 improperly reported and submitted pension and welfare contributions on behalf of William Jones at the same time that Jones was systematically underreporting benefit contributions on behalf of the company's other laborers. The Funds argue that Jones was both an owner, for whom benefit contributions may not be made under Fund rules, and a supervisor, who cannot be a member of a bargaining unit and is thus ineligible to have contributions paid on his behalf.

Section 1.8 of the Rules and Regulations of the Laborers' Pension Fund defines

"employee" to exclude "any . . . individual whose ownership would, in the opinion of the

Trustees, jeopardize the tax-exempt status of the Fund or violate any provisions of ERISA or the

Labor Management Reporting and Disclosure Act of 1959." Pl.'s Ex. H-1. Under the LMRA,

"supervisor" is defined as:

> [A]ny individual having authority, in the interest of the employer, to hire,
> transfer, suspend, lay off, recall, promote, discharge, assign, reward, or
> discipline other employees, or responsibility to direct them, or to adjust
> their grievances, or to effectively recommend such action, if in connection
> of the foregoing the exercise of such authority is not merely routine
> or clerical in nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). *See also NLRB* v. *Joe B. Foods, Inc.*, 953 F.2d 287, 294 (7th Cir. 1992)

("[S]ection 2(11) [of the National Labor Relations Act] is to be read in the disjunctive;

possession of any one of the above indicia of supervisory status is sufficient to render an

employee a statutory supervisor.").

Genuine issues of material fact exist regarding William Jones's status as an owner of

Surface Dimensions. It is unclear whether Jones was an owner. His wife, Lynn Jones, was a

100% shareholder, and his one-time $351,000 loan to the company is not sufficient to establish

ownership. Moreover, Surface Dimensions contributed benefits on behalf of Jones for 16 years

without objection from the Funds. Viewed in the light most favorable to the non-movants, these

facts are not sufficient to clarify for certain whether Jones was an owner.

Nonetheless, Jones's status as a statutory supervisor is not subject to genuine dispute.

Jones admitted that he was at all relevant times president of Surface Dimensions. W. Jones

Dep., Pl.'s Ex. D at 7. When asked to state his "function at Surface Dimensions," Jones

responded, "I run it." *Id.*, Pl.'s Ex. B at 6,11; Pl.'s Ex. D at 8. He had the right to hire and fire

for Surface Dimensions. Pl.'s Statement of Undisputed Material Facts ("Pl.'s Statement") ¶ 20;

W. Jones Dep., Pl.'s Ex. D at 12. Neither did he dispute the statements in the Skala declaration that Jones assigned the work that they were performing. Pl.'s Statement ¶ 36. At the same time, he claims that he did not direct employees on the job site in all cases, and that hiring and firing, and the assignment of crews, was conducted through a "team effort." Def.'s Statement of Undisputed Material Facts ¶¶ 5–6. Jones also states that he worked with tools on jobs for Surface Dimensions. *Id.* at ¶ 3. He argues that any supervisory authority he did have was "merely routine or clerical in nature and not derived solely from his independent judgment." Def.'s Resp. to Motion for Summary Judgment at 10.

That Jones may have engaged in team work with his employees, done clerical work, or worked with tools and allowed others to supervise as well as himself, does not override his admission and the indisputable evidence of record that he ran the company. He was the CEO. As such, he is a statutory supervisor. *See Williams* v. *Seniff* , 342 F.3d 774, 785 (7th Cir. 2003) ("Although a nonmoving party's own deposition may constitute affirmative evidence to defeat summary judgment, conclusory statements in the deposition do not create an issue of fact.").

Thus it is clear that Surface Dimensions should not have paid into the Funds on Jones's behalf. Nonetheless, Jones argues persuasively that since the company paid into the Funds, the $104,576.53 in benefits he received are not necessarily the measure of loss to the Funds. Thus, the amount of reimbursement due is reserved for resolution at trial or, preferably, by the parties without the expense of litigating the question further. Accordingly, the court will deny summary judgment on this issue.

## CONCLUSION

For the foregoing reasons, the Funds' motion for summary judgment is granted in part

and denied in part. All three defendants are liable for the audit's finding of $249,809.37 in unpaid contributions, dues, interest, liquidated damages and audit costs, plus attorneys' fees. Summary judgment is granted as to liability on the Funds' claim for unauthorized benefits paid to William Jones but denied as to the amount.

This case will be called for status on March 24, 2011, at which time the parties shall report on the status of all matters that need to be addressed so that final judgment may be entered.

Dated: March 8, 2011                 Enter: _____

                                            JOAN HUMPHREY LEFKOW
                                            United States District Judge